GILLOTTI and others, Plaintiffs in error, vs. THE STATE, Defendant in error.

*April 22—May 8, 1908.*

*Robbery: Sufficiency of information: Evidence: Hearsay: Sufficiency: Improper remarks by counsel during trial: Removing prejudicial effect: Necessity of rulings or exceptions.*

1. An information charging robbery "forcibly and by violence" is a substantial compliance with sec. 4378, Stats. (1898), requiring "force and violence," and, after conviction especially, the slight distinction between the forms of expression may be disregarded by the court under sec. 2829, Stats. (1898).

2. Where a statute defines a crime of a lower grade by using words negativing an element required for a crime of a higher grade of the same general nature, an information charging the lower crime is sufficient without specifically alleging the absence of the element which is essential to constitute the crime of the higher grade.

3. An information under sec. 4378, Stats. (1898), is sufficient although it does not specifically negative that defendant was "armed with a dangerous weapon."

4. Where the complaining witness in a prosecution for robbery testified that he described one of the robbers shortly after the offense was committed to the sheriff, who was then permitted to testify that such description was given him, and the nature of it, *held* that, notwithstanding the preliminary statement of the complaining witness that he had given a description to the sheriff, the testimony of the latter was incompetent as hearsay. MARSHALL, SIEBECKER, and KERWIN, JJ., dissent on the ground that such testimony was admissible on the same principle that a memorandum or its contents, verified by the person who made it, may be used by such person,—the utterances to the sheriff in this case being verified by the person who made them.

5. The prejudicial effect of improper remarks by counsel in course of argument is *held* to have been removed by adequate disclaimer and by the instructions of the court.

6. Remarks by counsel to the jury will not be regarded as error unless exceptions are duly taken to them and rulings made in respect thereto by the trial court. ·

7. In a prosecution for robbery the testimony is *held* sufficient to warrant the finding of the jury that the defendants were of the party committing the offense.

ERROR to review a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

The information charged three distinct offenses. Plaintiffs in error were found guilty of a charge made in these words:

"I, Robert Verne Baker, district attorney for said Kenosha county, hereby further inform the court that on the said 20th day of December, in the year A. D. 1907, at said county, *Charles Gillotti, Emanuel Capello,* and *Joseph Catuso,* in and upon Nicola Sacchi, then and there being, feloniously did make an assault, and then and there nineteen dollars lawful money of the United States, of the value of nineteen dollars, two shot-guns and one revolver, of the value of twenty-five dollars, of the money, goods, and chattels of him, the said Nicola Sacchi, from the person and against the will of the said Nicola Sacchi, then and there feloniously, forcibly, and by violence, and by putting him, said Nicola

Sacchi, in fear, did take, steal, and carry away; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Wisconsin."

There was evidence tending to show that Nicola Sacchi, the complaining witness, who lived in a shanty about a quarter of a mile from the Northwestern depot in Berryville, Kenosha county, Wisconsin, about 7 o'clock p. m. of December 20, 1907, was robbed by five men, three of whom were plaintiffs in error, in manner and form as charged in the information. There was no question upon the trial but that an offense of the nature of the one charged, or one of a more serious nature, was by five men committed at the time and place alleged. Plaintiffs in error offered testimony tending to prove that they were not the guilty parties.

*Wallace Ingalls,* for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Robert Verne Baker,* district attorney for Kenosha county, and oral argument by *Mr. Messerschmidt* and *Mr. Baker.*

MARSHALL, J. The first contention in behalf of plaintiffs in error is that the jury did not find them guilty of any offense known to the law. The state, answering such contention, claims that the count in the information covered by the verdict substantially charges the offense specified in sec. 4378, Stats. (1898), which provides that

"Any person who shall, by force and violence or by assault and putting in fear, feloniously rob, steal and take from the person of another any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be punished by imprisonment in the state prison not more than seven years nor less than one year."

It will be seen that the statute calls for either the characteristic of "force and violence" or "assault and putting in

fear" to constitute the offense mentioned. The first of such alternatives, it is considered, is substantially covered by the language of the information "forcibly and by violence." There is no appreciable distinction between the two expressions. One could not perpetrate an offense "forcibly and by violence" without doing so by force and violence. To make a distinction between the two expressions fatal to an information, especially after conviction, would be a most clear violation of the statutory demand and the settled judicial policy that "the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party. . . ." Sec. 2829, Stats. (1898).

In any case under sec. 4378, Stats. (1898), the offense is required to be characterized by absence of the element of "armed with a dangerous weapon" as to the offender. In case of his being so armed, all other essentials of the offense being present, the crime is of a higher grade and covered by some one of the other sections of the statutes relating to robbery from the person. The charge in the information is silent as to such characteristic and so, relying on the reasoning in *People v. Calvin*, 60 Mich. 113, 26 N. W. 851, where under statutes relating to robbery from the person similar to ours it was held that a failure to charge either that the offender was or that he was not "armed with a dangerous weapon," rendered the information insufficient to satisfy either grade of the offense. Manifestly, such failure would render a charge insufficient to satisfy the statute as to any grade which requires the element of "armed with a dangerous weapon," but to hold that neglect to charge absence of such characteristic is fatal as to the lowest grade of the offense does seem, "as claimed by the state," extremely technical and entirely out of harmony with the policy of our system heretofore indicated. It would seem, looking to the substance of things, that an allegation as to whether the offender

was "armed with a dangerous weapon" is only essential to show that the offense is one of a higher degree than the lowest which would include the latter.

It is the opinion of the court, as counsel for the state insist, that a less technical rule for testing the sufficiency of an information charging the lesser of several degrees of crime of the same general character has been adopted by this court and notably in *State v. Kane,* 63 Wis. 260, 23 N. W. 488. This general rule is there established:

"Every circumstance necessary to an exact description of the offense as defined by the statute *creating it* must be critically set forth."

That "is limited to entire and distinct offenses." It does not apply "to different grades of the same general offense, where the higher grade is made to consist of certain special particulars or circumstances affirmatively expressed as the necessary ingredients of the offense, and a lower grade thereof is made ·complete by excluding certain elements of the higher grade by negative words. Charging the lower grade, and leaving out or omitting such elements of the higher, is a full and complete allegation of the lower grade, without alleging specifically that they are omitted by the use of such negative words as the statute uses only for the purpose of creating it." That seems to apply clearly to the situation before us.

The court recognized the existence of a different rule in some jurisdictions, but approved the one adopted in Massachusetts, citing *Phillips v. Comm.* 3 Met. 588, and *Larned v. Comm.* 12 Met. 240, and held that such had long been the rule here, citing *Lacy v. State,* 15 Wis. 13; *Bell v. State,* 20 Wis. 599. *State v. Kroscher,* 24 Wis. 64, is a very striking illustration of the rule. The indictment was under sec. 10, ch. 165, R. S. 1858, now sec. 4408, Stats. (1898), providing that "every person who shall break and enter any dwelling house in the nighttime, with such intent as is mentioned in the next preceding section, or who having

entered with such intent, shall break such dwelling house in the nighttime, the offender not being armed nor arming himself with a dangerous weapon," etc., "shall be punished," etc. It was held without noting that the rule governing the matter was established in *Lacy v. State, supra,* that it was not necessary to a good indictment under such section to negative the "being armed nor arming . . . with a dangerous weapon;" the element required to constitute a higher offense of burglary.

The principal litigated question on the trial was whether plaintiffs in error were of the five persons whom the complaining witness, Nicola Sacchi, claimed committed the robbery. It turned, in the main, on his evidence identifying them on the trial as guilty parties. His evidence in chief was somewhat discredited by that on cross-examination, the fact being that the accused persons were Italians, and though he testified he had known *Gillotti,* one of them, for over a year before the robbery, yet testified he did not know any of them when they first entered his habitation, and told a farmer, living a short distance therefrom, to whose home he went soon after the robbery to report it by telephone, that the guilty parties were tramps and did not say to him that one was *Gillotti,* or that they were Italians. After his cross-examination he was permitted to testify, under objection, in effect that he described one of the persons who robbed him to the sheriff of the county some two hours subsequently to the commission of the offense. The sheriff was then permitted to testify, under objection, that such description was given to him, and the nature thereof.

If the evidence of the sheriff was improper it is quite clear the admission of it was harmful error, since in the absence thereof the jury might reasonably have come to the conclusion that the other evidence pointing to the accused as guilty parties was not sufficiently probative to remove all reasonable doubt on the question.

Counsel for plaintiffs in error contend that the sheriff's

evidence was mere hearsay and not distinguishable in character from that condemned in *O'Toole v. State*, 105 Wis. 18, 80 N. W. 915. Identity in character is certainly complete, if the testimony of the complaining witness in the instant case preliminary to that of the sheriff be left out of account. It is the opinion of the court that whether it be so left out or not does not cut any figure in the result; that in any event the evidence of the sheriff was clearly hearsay. Personally, the writer does not concur in that view.

Complaint is made because this question propounded to defendant *Capello* on cross-examination was sustained: "Isn't it a fact that you and *Charlie Gillotti* and *Catuso* and some other Italians have a society which meets in *Charlie Gillotti's* house?" It is a sufficient answer thereto to say, as the fact appears from the record, that the question was not answered, and that some questions which followed of somewhat the same character were answered positively in the negative. We are unable to see anything prejudicial at that point.

Further complaint is made because the district attorney in closing to the jury stated that the deputy sheriff traced the tracks of the accused *Capello* and *Catuso* from a certain point down to the scene of the crime. During a colloquy respecting such statement the district attorney disclaimed any intention to state that the witness testified the tracks he followed were those of *Catuso* and *Capello*, but only that the effect of his evidence was that he traced tracks circumstantially shown to be theirs. With that disclaimer the statement complained of was not prejudicial.

Further complaint is made because the district attorney said in his argument to the jury: "The defense of *alibi* has been termed by law writers as the rogue's defense." If that remark was illegitimate, the error was cured by the court's instructions giving due dignity to such defense. The jury must have understood that it was perfectly legitimate, and

that they were required to as carefully consider all of the evidence in respect thereto as that regarding any other branch of the case.

On the whole, it does not seem that any of the remarks of counsel complained of were sufficiently prejudicial, if prejudicial at all, to warrant the court in disturbing the conviction, in the absence of anything in the record showing that distinct rulings upon exceptions to the remarks were made or asked for. The record merely shows, as in *Miller v. State,* 106 Wis. 156, 81 N. W. 1020, that the remarks were excepted to. It does not appear that the exceptions were passed upon. Ordinarily, remarks by counsel in addressing a jury will not be regarded here as fatal to the result unless exceptions were duly taken to such remarks and rulings were made in respect thereto, or at least such rulings were affirmatively requested showing that the judicial mind was unquestionably challenged in respect to the matter.

Error is assigned upon the ground that the verdict is not supported by the evidence, particularly on the question of whether the accused were of the five persons who committed the offense. The argument of counsel on this branch of the case has received due consideration. It does not seem to be advisable to discuss the evidence in detail in this opinion. It is deemed sufficient to say that in the opinion of the court there was legitimate evidence from which a jury might reasonably have arrived at the conclusion complained of.

There is no question in the case which seems to require special mention aside from those already referred to.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial. The superintendent of the state reformatory at Green Bay, Wisconsin, is directed to deliver such of the plaintiffs in error as are in his custody into the custody of the sheriff of Kenosha county, who is directed to safely keep them until some further order for their custody or for their discharge shall be made according to law.

MARSHALL, J.   I do not concur with the majority in condemning the evidence of the sheriff as hearsay.

The basis for the holding in *O'Toole v. State,* 105 Wis. 18, 80 N. W. 915, was that the evidence introduced into the case the unsworn declaration of the person who gave the description of the guilty party. That is the basis of all hearsay.   If a witness, though he cannot remember what occurred at a particular time, testifies that while the occurrence was fresh in his memory he correctly related it to another, such other may then be permitted to testify as to what was so related.   Such testimony does not introduce an unsworn declaration into the case, as it seems is clearly manifest. That method of making proof is by no means uncommon.   It is quite well illustrated by the following: In *Young v. Miles,* 20 Wis. 615, it was held that evidence by a person as to facts appearing from his books which were not within his personal knowledge is hearsay, but in *Schettler v. Jones,* 20 Wis. 412, 418, it was held that although a person has no present knowledge as to facts, a memorandum whereof he entered upon his books, even by reference to such memorandum, if he testifies he knows he made the memorandum according as he knew the truth to be at the time of such making, he may then testify therefrom, or as it was held in *Bourda v. Jones,* 110 Wis. 52, 58, 85 N. W. 671, the memorandum may be introduced as original evidence, the element of hearsay being excluded by the fact that the truthfulness of the memorandum is verified by the oath of the witness with full opportunity for cross-examination.

Here the sheriff carried in memory the relation that was made to him.   That was as reliable as a memorandum. Upon its being verified by the complaining witness it was admissible in evidence by the mouth of the sheriff, on the same principle as the verified memorandum is admissible under the circumstances stated.

It must be kept in mind, in dealing with the subject of

hearsay evidence, that the real vice of such evidence is in that its admission would introduce into a case for testimonial use "unverified human utterances." 3 Wigmore, Ev. § 1768. In this case there was no such introduction. The utterances to the sheriff were verified upon the trial to be true by the person who made them.

Applications of the principles here discussed to a situation the same or similar to the one before us are not frequent. In general, the rule is laid down that if two or more persons in the whole furnish sworn testimony to the existence of a fact it is the evidence in the aggregate which is to be viewed in the testimonial light, and no part of it is hearsay.

*Shear v. Van Dyke,* 10 Hun, 528, is a good illustration. One witness testified that he noted the number of loads of hay delivered and gave the same truly to another. That other was then permitted to testify to the number of loads stated to him. The court said the latter evidence was original, not hearsay in character. The same rule was applied as in case of a memorandum before indicated. The same principle was applied in *Mayor v. Second Ave. R. Co.* 31 Hun, 241; *Comm. v. Storti,* 177 Mass. 339, 344, 58 N. E. 1021. From a class of these cases the rule is deduced in 16 Cyc. 1198, that "Where a witness testifies that he has truly stated to a third person of his own knowledge a fact that he has since forgotten, he thereby renders competent the testimony of that party as to what the forgotten statement actually was." It would seem that any circumstance rendering it reasonably necessary to thus use two witnesses to produce evidence of a fact, is sufficient to render that method of proof admissible, as in any event there is no element of hearsay about it. The circumstance in this case that corroboration of the complaining witness's evidence in chief, first given as to the description of those who robbed him, was rendered important by the cross-examination, was sufficient to

warrant the court, in the exercise of its discretion, in permitting the evidence in question.

The foregoing is supported by the reasoning in *Havenor v. State,* 125 Wis. 444, 451, 104 N. W. 116, and authorities there referred to.

I am permitted to state that Justices SIEBECKER and KERWIN concur in the views here expressed.