THE STATE v. FOLEY, *Appellant.*

Division Two, November 19, 1895.

1. **Criminal Law**: ASSAULT WITH INTENT TO KILL: EVIDENCE. On the trial of defendant for shooting at, with intent to kill, K. a police officer who was attempting to arrest him and his companion for an assault on one F. committed a few hours before, *held*, that, for the purpose of showing that K. was justified in arresting defendant, it was proper to ask on cross-examination such alleged companion (he having been introduced by defendant as a witness and not objecting to the evidence as tending to criminate him) whether he was not one of the persons who assaulted F. and whether he did not then shoot at an officer who was attempting to arrest him.

2. ———: ———: IMPEACHING WITNESS. The foregoing question hav-
ing been answered in the negative, the evidence thereby obtained
was sufficient for the purpose of laying a foundation to impeach the
witness.

3. ———: ———: HEARSAY EVIDENCE. It is not permissible to ask a
witness whether, when he was being tried for an offense, certain
witnesses did not testify.that he was the person who committed the
offense, such evidence being hearsay.

*Appeal from St. Louis Criminal Court.*—HON. J. F.
GREEN, Special Judge.

REVERSED AND REMANDED.

*R. F. Walker*, attorney general, and *C. O. Bishop*
for the state.

(1) The trial court did not err in its rulings on
the evidence. (2) The instructions fully declared the
law of the case and were in all respects appropriate
and correct. *State v. Grant*, 79 Mo. 113; *State v.
Hayes*, 89 Mo. 262.

BURGESS, J.—At the January term, 1894, of the
St. Louis criminal court defendant was convicted of
assault to kill, with malice aforethought, one Thomas
Keeshan by shooting at him with a pistol. His pun-
ishment was fixed at five years' imprisonment in the
state penitentiary. In due time defendant filed his
motion for a new trial, which was overruled. From
the judgment and sentence, he appealed.

About half past 1 o'clock on the night of January
4, 1894, while Thomas Keeshan, a police officer in the
city of St. Louis, was walking his beat, he observed
two men at the crossing of Broadway and Washington
avenue in said city near what is known as the Parisian
Cloak Company's store. Keeshan at once went across
Broadway and caught hold of one of them, a man by
the name of Cutler. The other one, the defendant, at

the same time started eastwardly, along Washington avenue. Keeshan fired a shot from a revolver over defendant's head, at the same time calling upon him to halt, whereupon Cutler called on defendant to return, otherwise the officer might shoot him, when defendant turned and came back to where Cutler and Keeshan were. Keeshan then started to the police station with them walking between them, having a hand on each of them, but on reaching an alley between Fourth and Fifth streets, defendant forcibly broke away from Keeshan, ran into the alley southward toward Morgan street, turned and fired twice with a pistol at Keeshan, who fired twice in return, he in the meantime holding on to Cutler. Defendant disappeared out of sight of Keeshan. Shortly after he disappeared in the alley a private watchman walking near Washington avenue on Fourth street saw defendant come from Morgan street and run diagonally across Fourth street. southwardly toward Lucas avenue. The watchman drew his pistol and halted him. At a signal given by the watchman, police officer Hayeman, came up and took defendant into custody, searching him at the time, but finding no weapon about him. Nor was a pistol of any kind found in the alley where defendant disappeared.

Just before Keeshan first arrested defendant and Cutler he had been informed that two men suiting their description had assaulted a man on Pine street. with intent to rob him and he thought from the description that had been given him of them that Cutler and defendant were the same persons.

Cutler testified in behalf of defendant as follows: That about 12:30 A. M., January 4, 1894, he met Foley on the corner of Broadway and Lucas avenue, where they drank together in a saloon, and then walked together south to Washington avenue, "to take a car;" there they encountered officer Keeshan, who said,

"what are you fellows doing here?" to which Cutler replied that he was "waiting for his car;" that the officer then felt outside the clothes of both of them as if to see whether they were armed, and then ordered them to leave the corner; that they crossed Washington avenue to the south side, and walked east to Fourth, the officer going in the same direction, on the north side opposite. On reaching Fourth street, they stopped, "waiting for a car;" when the officer crossed over to them and said, "what in hell are you fellows doing here? Did I not tell you to leave?" and thereupon took hold of Cutler, saying he was going to take him to the station, and ordered Foley to precede him, which the latter did, after some protest. They all walked north to Franklin avenue, and when they reached that corner, Foley "broke into a run," and as he did so, the officer fired at him; but Foley got into the alley and disappeared, going south toward Morgan. When the officer reached the mouth of the alley, he fired three shots, "presumably to attract the attention of the officers," who came, and the search was made, until Foley was brought back, when both of them were taken to the station and searched, and no weapon found upon either of them.

Police officer Kearney was called as a witness for the defense, to prove that he was the officer connected with the case of the assault and attempt to rob that night on Twenty-first and Pine streets, and to contradict the prosecuting witness as to the time when the report of such attempted robbery was made to the police stations. On cross-examination he stated, without any objection from defendant, that he knew Edward Cutler, and that he saw him that night just after the assault and attempt to rob, and undertook to arrest him and another as the robbers, but they got away, and

as he was pursuing them Cutler fired several shots at him.

Defendant did not testify as a witness in his own behalf. Defendant is not represented in this court.

In the motion for a new trial there were eight assignments of error, but a careful examination of the record has satisfied us that none of them were well taken, except it be to the action of the court in admitting over the objection of defendant illegal and incompetent evidence in the cross-examination of Cutler who testified as a witness in behalf of defendant. The questions and answers thereto of said witness were as follows:

"*Q.* Were you not one of the parties who assaulted and tried to rob a man by the name of John Farrington, in the neighborhood of Twenty-first and Pine, on the morning of January 4, 1894, between 12 and 1 o'clock? *A.* I am not.

"*Q.* And did you not, on the occasion of the aforesaid assault, shoot at officer Bart D. Kearney, upon said officer appearing on the scene and trying to arrest the parties who had made said assault upon Farrington? *A.* I did not.

The objections made to these questions were that the evidence was incompetent and irrelevant for any purpose, and that a witness' testimony or character could not be impeached in that manner. No objection was made by the witness to answering the questions upon the ground that his answers would have a tendency to expose him to a criminal liability or penal charge. Had such an objection been interposed by him he could have claimed the protection of the court, upon the ground that his answers would have tended to expose him to criminal liability for assault with intent to rob, and assault with intent to kill. 1 Greenl. Ev.

[15 Ed.], sec. 451. But no one else could make it for him. *Ibid.*

As the witness made no objection to answering, it becomes necessary to determine whether the evidence sought to be elicited was admissible for any purpose. In the course of the trial it was shown that an assault with intent to rob had been committed on one Farrington in the neighborhood of Twenty-first and Pine streets, on the morning of January 4, 1894, between 12 and 1 o'clock, by two persons suiting the description of defendant and the witness, which was known by Keeshan when he first arrested them, and the cross-examination was proper for the purpose of showing or tending to show that they were together at that time and committed the assault, and that Keeshan in arresting them was justified in so doing, he having at that time a well grounded belief that they were the same persons. Under the circumstances the evidence was also permissible for the purpose of laying a foundation to impeach him, he having answered in the negative.

The witness was also asked if he had not on a former trial of the defendant Foley been called out of the witness room into the court room, while one John Farrington was on the stand as a witness, so he, Farrington, might see him, and, answering in the affirmative, the following questions were propounded to, and answers thereto given by, him:

"*Q.* And did not the said John Farrington then and there identify you and swear you were one of the parties who had made an assault upon him, and tried to rob him on the morning of the fourth of January, 1894, between 12 and 1 o'clock, near Twenty-first and Pine streets in this city? *A.* Yes, sir.

"*Q.* Upon a trial of the charge of assault to kill against you, alleged to have been made by shooting at officer Bart D. Kearney, on the morning of January 4,

1894, between 12 and 1 o'clock, in the neighborhood of Twenty-first and Pine streets, which was tried in this court this week, did not said officer Kearney testify that you were the party who fired at him on said occasion, upon his attempting to arrest you for the assault and attempt to rob, then and there, on said Twenty-first and Pine streets, upon one John Farrington? *A*. He did so testify."

These questions were also objected to upon the same grounds that the former questions were. The objections were overruled and the witness required to answer.

We are unable to conceive of any theory of the law governing this case under which such testimony was admissible. It was merely hearsay, and was not permissible. Certain it is that it would not have been permissible for Farrington to testify to statements made by him as a witness upon a former trial of this case; nor for officer Bart D. Kearney, to testify to statements made by him as a witness on the trial of Cutler for assault with intent to kill, and, if not permissible for them to testify to such matters, for stronger reasons it was not proper for any other witness to do so.

Under the rulings of this court the action of the trial court in admitting this evidence is "presumably prejudicial," and as it does not appear from the facts disclosed by the record, that such was not the case, the judgment is reversed and the cause remanded. GANTT, P. J., and SHERWOOD, J., concur.